IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MNP HOLDING CO., LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   2:06-cv-00490-JEO |
| | ) |
| KRISHNA-VISION, LLC; BHANU DAYAL; and SURESH DAYAL, a/k/a SUNNY DAYAL, a/k/a SURESH PATEL, a/k/a SUNNY PATEL, | ) |
| | ) |
| Defendants/Third-party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BHARTI DAYAL and MAHESH DAYAL a/k/a MIKE DAYAL, | ) |
| | ) |
| Third-party Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the court on the plaintiff's motion for summary judgment on the claims asserted against defendants Krishna-Vision, LLC, Bhanu Dayal, and Suresh Dayal. (Doc. 29 (hereinafter "Motion")). Upon consideration of the merits, the court finds that the motion is due to be granted.

### BACKGROUND

This is a suit on a promissory note secured by commercial real estate. On April 30, 2002, defendant Krishna-Vision, LLC, executed a Promissory Note (hereinafter "the Note") with Regions Bank in the amount of $2,056,466.82 plus interest, costs, and attorneys' fees. (See Answer of Defendants (hereinafter "Answer") at ¶¶ 10 & 15; Ex. 1).[1] Defendants Suresh Dayal

---

[1] The exhibits are attached to document 29 in the record of the Clerk of the Court.

and Bhanu Dayal personally guaranteed the Note. (See Answer at ¶ 12). The Note was secured by a mortgage dated April 23, 1997, on a hotel owned by Krishna-Vision and by a security agreement in the hotel's personal property dated April 30, 2002. (Ex. 4).

Defendant Krishna-Vision defaulted on its obligations under the Note and Mortgage by failing to make the monthly payments due under the terms of the Note and also by failing to pay its property taxes due during the years 2004 and 2005. (Answer at ¶¶ 16, 17, 26 & 29). In February 2006, Regions Bank assigned the Note, Mortgage, and Security Agreement to the former plaintiff in this action, CS Assets, LLC. (Ex. 5). On April 11, 2006, the property containing Krishna-Vision's hotel was sold by the Jefferson County, Alabama Tax Collector. (Ex. 6). On the same day, CS Assets, LLC, redeemed the subject real estate from the Jefferson County Tax Collector. (Ex. 7). Immediately following the redemption, CS Assets conducted a foreclosure sale at which time CS Assets purchased the subject parcel of real estate for $1,200,000.00. (Ex. 8).

On April 25, 2006, CS Assets assigned the Note, Mortgage, and Security Agreement to the plaintiff (MNP Holding Co., LLC). (Nitin Patel Aff., Ex. 9 at ¶ 2 & Ex. 9A). The balance due on the Promissory Note at the time of the foreclosure sale was $1,959,115.40, consisting of a principal balance of $1,666,836.48, plus $149,985.24 (the cost of redemption), plus accrued interest in the amount of $102,493.89, plus late fees of $800, plus fees and expenses incurred by CS Assets, including attorney fees paid on behalf of CS Assets in the amount of $39,000.00. (Nitin Patel Aff. at ¶ 3 & Ex. 9B). Following the foreclosure sale, the balance due on the indebtedness (including credit due to the borrower by virtue of the purchase at the foreclosure sale) was $759,115.40, together with interest.

The plaintiff filed this matter to enforce the Note. It filed its motion for summary judgment on October 19, 2006. (Motion). It is unopposed by the defendants.

## DISCUSSION

### Summary Judgment Standard

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met her burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party

need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings.  (*Id*.).

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## Analysis

As already noted, this is an action to enforce the defendants' obligations under the Note discussed above and entered into on April 30, 2002.  The plaintiff correctly states in the motion that "[i]t is well settled that 'a promissory note is a form of contract; therefore, it must be construed under general contract principles.'  *Bockman v. WCH, L.L.C.*, 2006 WL 1361126, *5 (Ala. May 19, 2006); *see also* 11 Am. Jur. 2d *Bills and Notes* § 2 (1997) ('Bills and notes … are contracts; accordingly, the fundamental rules governing contract law are applicable to the determination of the legal questions which arise over such instruments.' (footnotes omitted)); William D. Hawkland and Larry Lawrence, UCC Series § 3-119, Official Comment (1994) ('As between the immediate parties a negotiable instrument is merely a contract. . . .')."  (Motion at 7).

It is similarly well-settled in Alabama that "when the terms of a contract are unambiguous, the contract's construction and legal effect become a question of law for the court,

and, when appropriate, may be decided by summary judgment." *Medley v. Southtrust Bank of the Quad Cities*, 500 So. 2d 1075, 1078 (Ala. 1986). As further noted by the plaintiff's counsel, "the general rule of contract law is that when parties reduce their agreements to writing, the writing is the sole expositor of the transaction and the intention of the parties, in the absence of mistake or fraud or ambiguity." *Medley*, 500 So. 2d at 1078. The terms of the Note in this case provide in pertinent part:

> **PROMISE TO PAY.** KRISHNA-VISION, LLC ("Borrower") promises to pay to REGIONS BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Fifty-six Thousand Four Hundred and Sixty-six & 82/100 Dollars ($2,056,466.82), together with interest on the unpaid principal balance from April 30, 2002, until paid in full.
>
> **PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 143 payments of $20,439.72 each payment and an irregular last payment estimated at $20,440.50. Borrower's first payment is due June 1, 2002, and all subsequent payments are due on the same day of each month after that. . . .
>
> . . . .
>
> **DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:
>
> > **Payment Default.** Borrower fails to make any payment when due under this Note.
>
> . . . .
>
> **LENDER'S RIGHTS**. . . . Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.
>
> . . . .
>
> **SUCCESSOR INTEREST.** The terms of this Note shall be binding upon

>Borrower, and Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

(Ex. 1) (Emphasis in original).

The terms of the Note executed by defendant Krishna-Vision are clear and unambiguous. As assignee of the Note, the plaintiff is the "Lender" under the terms of the Note. Defendant Krishna-Vision admits to not making payments in accordance with the Note and also admits that the Note is in default. Accordingly, summary judgment is due to be granted in favor of the plaintiff.

In addition to defendant Krishna-Vision's obligations under the Note and its liability for the outstanding indebtedness, the plaintiff correctly points out that defendants Suresh and Bhanu Dayal also personally guaranteed the indebtedness of Krishna-Vision which includes this Note. (Motion at 9). The general rules governing contract interpretation also are applicable in resolving questions as to the interpretation or construction of a guaranty contract. *See Dill v. Blakeney*, 568 So. 2d 774 (Ala. 1990); *Colonial Bank of Alabama v. Coker*, 482 So. 2d 286 (Ala. 1985); *Pate v. Merchants National Bank of Mobile*, 428 So. 2d 37 (Ala. 1983); *Dozier v. Paterson Company, Inc.*, 648 So. 2d 610 (Ala. Civ. App. 1994); *Moody v. Schloss & Kahn, Inc.*, 600 So. 2d 1045 (Ala. Civ. App. 1992). Accordingly, the plaintiff again correctly points out that "when the terms of the guaranty are clear and certain, its construction and legal effect are questions of law for the court. *See Moody*, 600 So. 2d 1045, 1047; *Government Street Lumber Co. v. AmSouth Bank*, 553 So. 2d 68 (Ala. 1989)." (Motion at 9-10).

The Commercial Guaranties signed by Suresh and Bhanu Dayal[2] separately provide in

---

[2] It is undisputed that defendants Suresh and Bhanu Dayal were previously known as Suresh and Bhanu Patel.

pertinent part:

>**CONTINUING UNLIMITED GUARANTY.**  For good and valuable consideration, [Suresh Patel and Bhanu Patel] ("Guarantor") absolutely and unconditionally guarantees and promises to pay to Regions Bank ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of Krishna-Vision, L.L.C. ("Borrower") to Lender on the terms and conditions set forth in this Guaranty.  Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.
>
>**DEFINITIONS.**  The following words shall have the following meaning when used in this Guaranty:
>
>>**Borrower.**  The word "Borrower" means Krishna-Vision, L.L.C.
>>
>>**Guarantor.**  The word "Guarantor" means [Suresh Patel and Bhanu Patel].
>>
>>**Guaranty.**  The word "Guaranty" means this Guaranty made by Guarantor for the benefit of Lender dated December 23, 1999.
>>
>>**Indebtedness.**  The word "Indebtedness" is used in its most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations, debts and indebtedness to Lender, now existing or hereinafter incurred or created, including without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, less obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.
>>
>>**Lender.**  The word "Lender" means Regions Bank, its successors and assigns.
>>
>>**Related Documents.**  The words "Related Documents" means and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements,

> mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.
>
> **NATURE OF GUARANTY.**  Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force.  Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Indebtedness.  Accordingly, no payments made upon the Indebtedness will discharge or diminish the continuing liability of Guarantor in connection with any remaining portions of the Indebtedness or any of the Indebtedness which subsequently arise or is thereafter incurred or contracted.
>
> **MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Guaranty:
>
> . . . .
>
> **Attorneys' Fees; Expenses.**  Guarantor agrees to pay upon demand all of Lender's costs and expenses, including attorneys' fees and Lender's legal expenses, Incurred in connection with the enforcement of this Guaranty.  Lender may pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

(Ex. 2 & 3)(Emphasis in original).

As with the Note, the terms of the personal guarantees executed by both Suresh and Bhanu Dayal are clear and unambiguous.  They admit signing the personal guarantees.  Suresh and Bhanu Dayal guaranteed and agreed to pay the indebtedness of Krishna-Vision.  They admit to not making payments on the Note.  They admit the Note is in default.  Therefore, summary judgment is due to be granted in favor of the plaintiff.

The balance due on the Note at the time of the foreclosure was $1,959,115.60.  (Nitin

Patel Aff. at ¶ 3 & Ex. 9B). Following the foreclosure sale, the balance due on the indebtedness (including credit due to the borrower by virtue of the purchase at the foreclosure sale) was $759,115.60, together with interest and late fees.

The Note provides for a variable interest rate equal to the Regions Financial Corp. Commercial Base Rate-Daily (Regions Base Rate) plus 1.5%. (Ex. 1). As of April 26, 2006, the Regions Base Rate was 7.75%. Thus, the Note Rate was 9.25%. The Note Rate changed on May 10, 2006, to 9.5% and again on June 29, 2006, to 9.75%. As of the date of the plaintiff's motion for summary judgment, the Regions Base Rate plus 1.5% was 9.75%. (Regions Bank Aff., Ex. 10).

Since April 26, 2006, the date MNP was assigned the Note; the following interest has accrued per day:

| | |
|---|---|
| Per Diem of $195.05 X 14 days (4/26/06-05/10/06) | $2,730.70 |
| Per Diem of $200.32 X 50 days (05/10/06-06/29/06) | $10,016.00 |
| Per Diem of $205.59 X 113 days (06/29/06-10/19/06) | $23,231.67 |

As of the date of the motion for summary judgment, the total accrued interest is $35,978.37. As shown above, the Note is currently accruing $205.59 of interest per day.

The Note also provides for a "Late Charge" of 5.000% of "the unpaid portion of the regularly scheduled payment" if a payment is made more than 10 days late. (Ex. 1 at 1). The Note further provides for regularly scheduled payments in the amount $20,439.72. Therefore, the Late Charge for each payment is $1,021.99. No payments have been made since MNP was assigned the Note. Accordingly, the defendants owe $6,131.94 in Late Charges related to the

9

Note through the month of October 2006.

In addition, the Note provides for the payment of attorneys' fees and expenses by the defendants related to any collection efforts:

> **ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and legal expenses whether or not there is a lawsuit. . . . If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

(Ex. 1 at 2).

## CONCLUSION

Premised on the foregoing, the court finds that the plaintiff's motion for summary judgment (doc. 29) is due to be granted. The plaintiff is due a judgment in the amount of $801,225.91, plus interest from the date of filing of this matter until the date of judgment. The plaintiff shall further be permitted leave to file an application for attorney fees' to be awarded after entry of the summary judgment.

**DONE**, this the 6th day of February, 2007.

*/s/ John E. Ott*
**JOHN E. OTT**
United States Magistrate Judge